## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND SERIO, B70625, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTINE BROWN, ILLINOIS DEPT. OF CORR., DAVID MITCHELL, BRANDON RIDGEWAY, DIANE SKORCH, BROCK MORGENSTERN, LT. McDONALD, JANE DOE #1, JANE DOE #2, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 23-CV-2874-DWD |

## <u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Plaintiff Raymond Serio, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants have violated his rights by failing to provide his medications in a timely fashion when he transferred from Menard, and by failing to house him in a cell that meets his mental health needs. He seeks injunctive relief and monetary compensation.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Plaintiff was transferred from Menard Correctional Center to Pinckneyville on January 6, 2023.  Upon intake, he informed Jane Doe 2 that he took psychotropic medications, and that a lapse in his medications would cause severe withdrawal.  (Doc. 1 at 6-7).  He explained that he suffers from severe depression, anxiety, schizoaffective disorder, and paranoia.  If his psychosis or paranoia is triggered, he can experience audio and visual hallucinations, which make him unable to differentiate between reality and paranoia/hallucinations.  Dr. Baig, a treating psychiatrist from Menard allegedly was going to contact administrators to ensure that Plaintiff would be single-celled due to his mental health.  Jane Doe 2 assured Plaintiff that she would receive and review all his charts, and she would make sure there were no medication delays.  (Doc. 1 at 7-8).

Ultimately, Plaintiff did not receive his medications until January 11, 2023.  At that point, he had already begun to suffer withdrawals, and it took a few days for the medication to remediate those symptoms.  (Doc. 1 at 10-11).  Plaintiff alleges his withdrawals began on January 8 and included body aches, headaches, sweats, chills,

vomiting, dry heaving, muscle cramping, dizziness, nausea, sleeplessness and dehydration. He became overly depressed and had suicidal thoughts. (Doc. 1 at 11).

After completing the medical intake, Plaintiff was directed to a female sergeant who was standing right in front of Defendant David Mitchell. He informed the two that he had single-cell status due to his mental health, which could be easily verified. Defendant Mitchell said something to the effect of, "we don't do single cell here," and he dismissed Plaintiff with the wave of a hand. The female officer escorted Plaintiff to building 4.

At the housing unit, Plaintiff informed Defendant Brock Morgenstern that he had mental illness concerns, and that he had previously been ordered to be housed in a single cell. Morgenstern told him to wait so that he could inquire about this issue. (Doc. 1 at 9). Morgenstern then returned and told Plaintiff to go to building 5.

At building 5 Plaintiff was directed to cell B-78. He informed Defendant Lt. McDonald that he had a medical permit for a low gallery cell due to a left knee injury that made stairs excruciating for him. (Doc. 1 at 10). McDonald told him the permit was no good at Pinckneyville, but that maybe later in the week he could adjust Plaintiff's cell location. Plaintiff asked McDonald several times about moving, and McDonald eventually told him the upper tier was for those who refused housing or had dayroom restrictions. He told Plaintiff he could not move him, so he should stop asking.

Plaintiff went before the Adjustment Committee on January 17, 2023, where he was told he had been written an inmate disciplinary report (IDR) for refusing housing. (Doc. 1 at 12). He insisted he had not gotten prior notice of the ticket, and the committee

promised to mail a copy of the ticket but refused to delay the hearing.  The committee members were Defendants Skorch and Ridgeway.  Plaintiff explained his mental health need for a single-cell and gave an example of a previous paranoid outbreak where he stabbed a cellmate in the face and tried to bite his finger off.  (Doc. 1 at 12-13).  Plaintiff asked Skorch and Ridgeway to verify his allegations via the Offender 360 computer program, but Skorch told him there were no single-cells or protective custody cells at Pinckneyville.  Ridgeway told Plaintiff he would check into his claims at a security meeting that week, and if Plaintiff's statements were true, the IDR would be thrown out.  Plaintiff was ultimately found guilty, but he does not indicate what the consequences were from this disciplinary conviction.

Plaintiff alleges that Defendants Christine Brown, David Mitchell, and Jane Doe 1 (the mental health administrator at Pinckneyville) created and enforced policies that deprived Plaintiff and others of the IDOC facilities and of prescribed psychiatric and medical protections.

He identified enumerated claims that include: Eighth Amendment cruel and unusual punishment, First Amendment retaliation, and a claim of intentional infliction of emotional distress against all defendants.  He also included Americans with Disabilities Act (ADA) and Rehabilitation Act claims.  (Doc. 1 at 19-20).  He alleges he has mental and physical disabilities that significantly limit one or more of his life activities, and he alleges defendants failed to accommodate these disabilities.

Based on the allegations in the Complaint, the Court will designate the following claims:

**Count 1:** **Eighth Amendment deliberate indifference claim against Jane Doe 2 for failing to ensure that Plaintiff's medications were continued;**

**Count 2:** **Eighth Amendment cruel and unusual punishment claim against Defendants Mitchell and McDonald for refusing to house Plaintiff in a cell that met his needs;**

**Count 3:** **First Amendment retaliation claim against Defendants Skorch and Ridgeway for allowing Plaintiff to be disciplined over his requests for single-cell housing;**

**Count 4:** **Intentional Infliction of Emotional Distress against all Defendants;**

**Count 5:** **ADA/RA claim against IDOC for failing to accommodate Plaintiff's disabilities.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## <u>Preliminary Dismissals</u>

Plaintiff tries to lump Defendants Christine Brown (the healthcare administrator) and Jane Doe 1 (the mental health administrator) in to his Eighth Amendment cruel and unusual punishment claims without describing how they personally played a role in an act that harmed him. The general responsibility to oversee the operations of a correctional facility or to supervise its staff are not sufficient to create liability under § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "Section 1983 does not establish

a system of vicarious responsibility.  Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Id.* at 593-94 (internal citation omitted).  Here, Plaintiff has not identified anything that these defendants personally did other than hold a supervisory role, so his claims against them in their individual capacities are insufficient.

The Court notes that Plaintiff also alleges that these two defendants and Defendant Warden Mitchell created and implemented a policy that deprives inmates of needed medical and mental health treatment.  This assertion is threadbare, so it will not proceed.  The mere indication that a policy exists, without any elaboration beyond the Plaintiff's own experience on a single occasion is insufficient to make out a policy or practice claim.  As such, Plaintiff has not pled a valid claim against Defendants Brown or Jane Doe 1, so they will be dismissed without prejudice.

Plaintiff also alleges that Defendant Morgenstern violated his rights, but it is not clear what he alleges Morgenstern did that violated his rights.  He listed Morgenstern with his First Amendment retaliation claim, but there is not a sufficient factual basis.  At most, he has alleged that he asked Morgenstern for appropriate housing in a single-man cell, Morgenstern looked into it, and then he sent Plaintiff to another cellhouse.  Nothing about this series of events suggests retaliation or foul play.  Accordingly, Morgenstern is dismissed for failure to state a claim.

## Analysis

### Claim 1

Plaintiff alleges that Jane Doe 2 recorded his medical and mental health needs, and she promised to follow-up to ensure he got his medications.  Despite these assurances, there was a five-day lapse in his medication, and he experienced withdrawals for two or three days.  At this preliminary juncture, Plaintiff will be allowed to proceed against Jane Doe 2, though ultimately this claim will turn on if Jane Doe 2 was even aware the medications lapsed, or Plaintiff went into withdrawal.

### Claim 2

Plaintiff alleges that he verbalized his need for a single-man cell directly to Warden Mitchell, and Mitchell simply dismissed him.  Inmates do not have a protected interest in any particular living arrangement, but "[b]y prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021).  Courts have also acknowledged the possibility that the "need for mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).  At this early juncture, Plaintiff's allegation that Mitchell blatantly refused to consider his needs based on his serious mental illness might be sufficient to make out an Eighth Amendment claim.

Plaintiff also alleges that Defendant McDonald denied him adequate housing because he placed him in a cell that was located on a high gallery even though he had a

permit from his last prison for a low gallery cell.  Specifically, he claims he told McDonald that he had a prior knee injury which made ascending the stairs excruciatingly painful. This claim presents a much closer call than the allegations against Mitchell.  Again, inmates are not entitled to demand specific housing.  Plaintiff alleges the stairs were painful, but he does not allege he was unable to ascend and descend, nor does he describe how it actually went for him to live in this location.  For example, he does not allege that McDonald watched him struggle with the stairs in pain and refused assistance.  *See e.g.*, *Salley v. Parker*, 2022 WL 2952818 (N.D. Ill. July 26, 2022) (finding that a medical permit did not establish a serious medical need, and could not, without more, establish deliberate indifference based on a second-floor housing assignment).  Ultimately, this claim will depend on a fact-specific analysis, but at this preliminary juncture it may proceed against McDonald.

## Claim 3

Plaintiff alleges that Defendants Ridgeway and Skorch retaliated against him by finding him guilty of the IDR for refusing housing that was based upon his verbal requests for a single cell.  Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).  "A complaint

states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).  Although Ridgeway and Skorch did not issue the disciplinary ticket, Plaintiff alleges that he fully informed them of his reasons for opposing housing and that they still found him guilty of the ticket.  The allegations in the Complaint are sufficient to proceed against Ridgeway and Skorch on a theory of retaliation at this early juncture.

**Claim 4**

Plaintiff will be allowed to proceed on his state law claim of intentional infliction of emotional distress only against the parties for whom other claims will proceed. Accordingly, this claim may proceed against Defendants Jane Doe 2, David Mitchell, McDonald, Ridgeway and Skorch.  By contrast, this Court declines to exercise supplemental jurisdiction over any such claim against the other defendants for whom there are no other federal claims.  28 U.S.C. § 1367.

**Claim 5**

At the end of his complaint, Plaintiff tacks on allegations that his rights under the Americans with Disabilities (ADA) and Rehabilitation Act (RA) have been violated by the defendants, and the IDOCs, actions.  (Doc. 1 at 19-20).  To state a prima facie case of discrimination under both the ADA and the RA, a plaintiff must plead sufficient facts to show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability.  *Jackson v.*

*City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).  The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance.  *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a).  The ADA applies to state prisons, as all such institutions receive federal funds.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Under Title II of the ADA regarding discrimination in public accommodations, "qualified individual with a disability" means "an individual with a disability who, with or without...the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Plaintiff does not specify whether these claims are about his mental health needs or his knee injury, or both.  He also has not made it particularly clear what his current housing situation is, or how it meets or fails to meet his needs.  While it is possible that Plaintiff has identified conditions that might allow for an ADA or RA claim, his complaint is too vague to sustain the claim as initially pled.  Accordingly, any claim related to the ADA or RA is dismissed without prejudice, and the Illinois Department of Corrections is dismissed as a defendant in association with either of these claims.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant Jane Doe 2; **Claim 2** survives against Defendants Mitchell and

McDonald; **Claim 3** survives against Ridgeway and Skorch; and **Claim 4** survives against Jane Doe 2, Mitchell, McDonald, Ridgeway and Skorch.  By contrast, all claims against all other defendants are dismissed without prejudice for failure to state a claim, and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Christine Brown, IDOC, Brock Morgenstern, and Jane Doe # 1.

The Clerk of Court is **DIRECTED** to prepare for Defendants: David Mitchell, Lt. McDonald, Brandon Ridgeway, and Diane Skorch: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: November 13, 2023

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.