IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND SERIO, B70625, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CHRISTINE BROWN, ILLINOIS DEPT. OF CORR., DAVID MITCHELL, BRANDON RIDGEWAY, DIANE SKORCH, BROCK MORGENSTERN, LT. McDONALD, SYDELLE FULK, WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 23-cv-2874-DWD

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Raymond Serio, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants have violated his rights by failing to provide his medications in a timely fashion when he transferred from Menard, and by failing to house him in a cell that meets his mental health needs. Upon initial review, Plaintiff was allowed to proceed on a handful of claims against named defendants, while others were dismissed. (Doc. 9). Plaintiff has now filed an Amended Complaint (Doc. 27).

Plaintiff's Amended Complaint (Doc. 17) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint and Amended Complaint

Upon review of the original pleading, the Court allowed Plaintiff to proceed on the following claims:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Sydelle Fulk for failing to ensure that Plaintiff's medications were continued;**
>
> **Count 2:** **Eighth Amendment cruel and unusual punishment claim against Defendants Mitchell and McDonald for refusing to house Plaintiff in a cell that met his needs;**
>
> **Count 3:** **First Amendment retaliation claim against Defendants Skorch and Ridgeway for allowing Plaintiff to be disciplined over his requests for single-cell housing;**
>
> **Count 4:** **Intentional Infliction of Emotional Distress against Defendants Fulk, Mitchell, McDonald, Ridgeway and Skorch;**

(Doc. 9).

In the Amended Complaint, Plaintiff reiterates many of his original allegations verbatim. He has added a bit of detail to some of the allegations. For example, he alleges

that he met with Fulk immediately upon intake at Pinckneyville and relayed all of his mental health needs, but she deliberately failed to write down any of the details of their visit and failed to act upon the information that he relayed, despite appreciating the seriousness of his situation through her training and experience. (Doc. 27 at 7).

In the Amended Complaint, Plaintiff adds details about Defendant Morgenstern, a guard who was dismissed from his original pleading due to a lack of sufficient detail. Specifically, Plaintiff alleges that he interacted with Morgenstern when he arrived at his first housing unit at Pinckneyville. As he had with all other officials, he informed Morgenstern that he was to be single-celled because of his mental health needs, and that he needed a low gallery room because his knee injury prevented him from safely traversing stairs. (Doc. 27 at 9). Morgenstern briefly left the wing and then returned and directed Plaintiff to another housing unit where he assured Plaintiff things would be "straightened out." (Doc. 27 at 9). Plaintiff alleges that in reality Morgenstern issued him a false disciplinary ticket for "refusing housing," when in fact Plaintiff claims all he did was state his needs rather than refuse a direct order. (Doc. 27 at 9, 12-13).

As to Defendant McDonald, Plaintiff emphasizes that he repeatedly told McDonald he needed a low gallery placement due to his knee issues, but McDonald refused and eventually told him he had to be on the upper gallery because that was the area for housing refusals. (Doc. 27 at 10-11). Plaintiff argues that McDonald should not have refused to honor his medical permit because staff are trained to follow medical permits that are issued with the approval of medical personnel. He further contends that

IDOC's policy requires permits to be honored from facility to facility. McDonald allowed him to suffer the excruciating pain of traversing the stairs for 25 days. (Doc. 27 at 11).

In the original complaint, Plaintiff provided no individualized detail about Christine Brown's involvement in the events he describes. In the Amended Complaint, Plaintiff alleges that Brown was personally aware through staff email and other forms of communications that he and other prisoners were not receiving needed medication, but despite this knowledge she ignored the risk of harm to Plaintiff, and he did not receive his medication until January 11, 2023. (Doc. 27 at 11). At that point, he had already begun to experience withdrawal that started on January 8, 2023.

Plaintiff further alleges that Defendants Brown and Mitchell promulgated rules, regulations, policies, and procedures for the provision of medical and mental health screening and care that contributed to the violations described in his complaint. (Doc. 27 at 15). He additionally faults Wexford for maintaining "written and/or unwritten rules, regulations, policies and procedures that were major contributions to the violations and injuries set forth in this complaint, Wexford also trains its staff not to believe prisoners on medical issues." (Doc. 27 at 15). In an enumerated claim, Plaintiff alleges that Wexford maintained policies and procedures that resulted in the routine denial of sufficient medical and mental health care. (Doc. 27 at 20).

Finally, Plaintiff revisits his accommodations related claim by alleging that his left knee injury and his mental illness are both impairments that substantially limit his life activities. (Doc. 27 at 15). In his view, a low gallery and single-cell housing placement are the proper accommodations that should have been immediately honored at

Pinckneyville.  (Doc. 27 at 15).  In enumerated claims, he alleges that the ADA and RA were violated or not immediately honored upon his transfer.  He claims he cannot traverse stairs safely, and if he is not single-celled his psychosis and paranoia may be triggered.  (Doc. 27 at 22-24).  He admits he is currently being provided a single-cell and is housed on the lowest gallery, but this was not done in a timely manner or without punishment.  (Doc. 27 at 23).

Based on the allegations in the Amended Complaint, the Court will designate and/or reinstate the following additional claims:

> **Count 1:**   **Eighth Amendment deliberate indifference claim against Sydelle Fulk <u>and Christine Brown</u> for failing to ensure that Plaintiff's medications were continued;**
>
> **Count 2:**   **Eighth Amendment cruel and unusual punishment claim against Defendants Mitchell and McDonald for refusing to house Plaintiff in a cell that met his needs;**
>
> **Count 3:**   **First Amendment retaliation claim against Defendants Skorch, Ridgeway, and <u>Josh McDonald</u> for allowing Plaintiff to be disciplined over his requests for single-cell housing;**
>
> **Count 4:**   **Intentional Infliction of Emotional Distress against all Defendants;**
>
> **Count 5:**   **ADA/RA claim against IDOC for failing to accommodate Plaintiff's disabilities.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  See *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff again attempts to state a policy or practice claim against Defendants Christine Brown and David Mitchell for their roles in overseeing the prison. He has named these two in their individual and official capacities. A policy or practice claim against an employee of the state is viewed through the lens of an official capacity claim against the employee for his or her role. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) ("plaintiff sued the defendants in their official capacity, and so the lawsuit is against a state agency"). The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees acting in their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). Under the exception outlined in *Ex Parte Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 345 ("[A] private party may sue individual state officials in federal court to obtain prospective relief for an ongoing violation of federal law."). Here, however, Plaintiff admits that he had just about six days without this medication, he is now housed in a low gallery cell, and he is in a single cell. Given that all of these items appear to have been addressed at this

point, there is no further injunctive relief that is available, so his policy or practice claim against Brown and Mitchell in their official capacities is rendered moot and will be dismissed.

Plaintiff also attempts to now incorporate a policy or practice claim against Wexford, the corporate medical contractor for the IDOC. To establish liability against a corporate medical contractor in a prison, an inmate must demonstrate that the constitutional violation alleged was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

As for Wexford, Plaintiff's allegations are overly generic. He alleges there must be some policy or practice that has prevented him from securing adequate mental health

and medical care, but he does not describe what that policy is, or when it impacted him. Although he discusses his chronic knee injury in the complaint, he does not seem to describe instances when he was actually denied care or treatment. He alleges he was without his medications for six days but does not otherwise allege he has been denied access to mental health services or medication. Given that his only concrete allegation is that he missed his medications for six days, this appears more like a one-time issue that a deficiency caused by a standing policy or practice. Plaintiff's allegations are too generic to proceed against Wexford, so they will be dismissed without prejudice for failure to state a claim.

## Analysis

### Claim 1

Plaintiff has already been allowed to proceed against Sydelle Fulk, and his amended complaint does not meaningfully change the scope of the claim that has been allowed to proceed. Plaintiff now alleges that Defendant Christine Brown should also be held liable for deliberate indifference to his situation because she was personally aware of medication distribution issues related to Plaintiff but did nothing to avert his six days of missed doses. Although these allegations are still quite ambiguous, Plaintiff has attributed the issue he experienced to Brown's own inaction, which may be enough to prevail under the Eighth Amendment deliberate indifference framework. Accordingly, he may now also proceed against Brown in her individual capacity on Claim 1.

### Claim 3

Plaintiff has already been allowed to proceed against Defendants Ridgeway and Skorch for disciplining him based on his assertion of his medical and mental health needs. He alleges now that Defendant Morgenstern participated in this chain of events because when he voiced his mental and medical health needs for cell placement to Morgenstern, Morgenstern responded by issuing him a false disciplinary ticket for refusing housing, and then sent him to an area of the prison that could not meet his needs and required his placement on a higher gallery.

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). For now, the Court will read the complaint broadly in Plaintiff's favor and it will accept that the issuance of a disciplinary ticket as a response to Plaintiff's voiced medical and mental health concerns may be considered an act of retaliation. Plaintiff may add Defendant Morgenstern to Claim 3.

**Claim 4**

Plaintiff was already allowed to proceed against Jane Doe 2, David Mitchell, McDonald, Ridgeway and Skorch for his state law claim. He may now also proceed against Morgenstern and Brown on this claim.

**Claim 5**

Plaintiff again alleges that his rights under the Americans with Disabilities (ADA) and Rehabilitation Act (RA) have been violated by the defendants, and the IDOCs, actions. (Doc. 27 at 15, 22-24). To state a prima facie case of discrimination under both

the ADA and the RA, a plaintiff must plead sufficient facts to show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). The ADA applies to state prisons, as all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Under Title II of the ADA regarding discrimination in public accommodations, "qualified individual with a disability" means "an individual with a disability who, with or without...the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Plaintiff now makes it clear that he is bringing this claim about his mental health needs, as well as his left knee injury. Beginning with the mental health situation, Plaintiff does not state anywhere in the amended complaint that he was ever housed in anything other than single-cell status at Pinckneyville. This is the cell status he claims he needs. As such, he cannot maintain an ADA or RA claim related to his mental health needs, because they have not been infringed by his housing placement.

As to the left knee issue, he now lives on a low gallery, but he alleges he was forced to live on a higher gallery for approximately 25 days. He claims that transiting the stairs caused him excruciating pain, but significantly, he does not allege that he was actually prevented from accessing any services or amenities by this impediment. Without saying he was denied access to anything, Plaintiff cannot make out an ADA or RA claim, so Claim 5 is again dismissed for failure to state a claim.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint (Doc. 1) survives against Defendants Sydelle Fulk and Christine Brown; **Claim 2** survives against Defendants Mitchell and McDonald; **Claim 3** survives against Ridgeway, Skorch, and Brock Morgenstern; and **Claim 4** survives against Sydelle Fulk, Mitchell, McDonald, Ridgeway, Skorch, Brown and Morgenstern. By contrast, all claims against all other defendants are dismissed without prejudice for failure to state a claim, and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendants IDOC, and Wexford Health Sources, Inc..

The Clerk of Court is **DIRECTED** to prepare for Defendants: Christine Brown and Brock Morgenstern: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 27), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Defendants have filed multiple motions for extension of time to answer and otherwise comply with the scheduling order (Doc. 17) in light of Plaintiff's amended complaint. (Docs. 28, 29, 30, 31). All Motions are **DENIED** as **MOOT** by the issuance of this Order. The existing Defendants do **NOT** need to file additional answers because the allegations against them have not changed the Court's previously designated claims, to which they already filed answers. (Docs. 16, 26, 32).

Defendant Sydelle Fulk has also moved to withdraw her affirmative defense of failure to exhaust administrative remedies. The Motion (Doc. 33) is **GRANTED**, however, merits discovery will remain stayed until the other defendants have a chance to pursue the issue of exhaustion.

The Defendants shall now have an additional **45 days** to file any motions on the exhaustion of administrative remedies. Any late appearing party (Christine Brown and Brock Morgenstern) should follow the schedule for late appearing parties contained in document 17.

**IT IS SO ORDERED.**

Dated: July 26, 2024

DAVID W. DUGAN
United States District Judge