IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RAYMOND SERIO,                          )
B70625,                                 )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )
                                        )
CHRISTINE BROWN,                        )          Case No. 23-cv-2874-DWD
DAVID MITCHELL,                         )
BRANDON RIDGEWAY,                       )
DIANE SKORCH,                           )
BROCK MORGENSTERN,                      )
JOSH McDONALD,                          )
SYDELLE FULK,                           )
                                        )
                    Defendants.         )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Raymond Serio, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred upon his arrival at Pinckneyville in January of 2023. (Doc. 17). Upon review of the original and amended complaints, the Court designated four claims to proceed. Defendants Brown, Mitchell, and Morgenstern filed a Motion for Summary Judgment on the issue of exhaustion of administrative remedies (Doc. 43), Defendants Ridgeway, Skorch, and McDonald have not filed a motion, and Defendant Fulk withdrew the affirmative defense of failure to exhaust administrative remedies. Plaintiff sought and was afforded additional time to respond to the Motion, but he has not responded. The Court now finds it appropriate to

grant the motion as to Defendant Brown, and to deny as to Defendants Mitchell and Morgenstern.

## BACKGROUND

Plaintiff was transferred from Menard to Pinckneyville on January 6, 2023. Upon arrival he spoke with Defendant Sydelle Fulk and informed her of his medication needs, the potential for withdrawal without his medications, and his mental health needs that he believed necessitated a single-cell placement. He also voiced concerns about his medical and mental health needs as they pertained to cell assignments to other prison staff in the presence of Warden Mitchell. He alleged in the complaint that Mitchell dismissed his concerns and stated, "we don't do single cell here." (Doc. 1 at 11). Plaintiff was directed by a female staff member to try voicing his concerns when he arrived at his assigned housing unit.

Upon arrival at the first housing unit (4 house), Plaintiff told Defendant Morgenstern that he had mental health issues which led to him being assigned a single cell at Menard, and that he believed this status followed him to Pinckneyville. Morgenstern told him to wait while he inquired further, and Morgenstern then returned and directed Plaintiff to building 5 for his issues to be addressed. At building 5, Defendant McDonald directed Plaintiff to cell B-78, which was on an upper gallery. Plaintiff informed McDonald that he had a low gallery permit due to a knee injury, which made traversing stairs excruciating, but McDonald told him the permit did not transfer and that he had to be housed on the upper deck because that area was designated for those who refused housing or who had a dayroom restriction.

On January 17, 2023, Plaintiff went before the Adjustment Committee (comprised of Defendants Ridgeway and Skorch) for a ticket related to his alleged housing refusal. He attempted to explain that he had not received notice of the ticket and that he had merely asked for a housing assignment consistent with his medical and mental health needs, but he was found guilty of the infraction. Plaintiff characterized Ridgeway and Skorch's imposition of discipline as retaliation for him voicing his mental health needs.

In an Amended Complaint (Doc. 27), Plaintiff faulted Defendant Christine Brown (the healthcare unit administrator) for being made aware via email and other forms of communication that he was not receiving his prescribed medications upon arrival at Pinckneyville. (Doc. 27 at 11). He alleges he missed his medications from January 6, 2023, through January 11, 2023, and began to experience withdrawal on January 8, 2023.

Also in the amended complaint, Plaintiff alleged that Defendant Morgenstern's actions were retaliatory because Morgenstern wrote him a disciplinary ticket for refusing housing in response to him voicing his mental health and medical needs related to housing placement.

Based on the foregoing allegations, Plaintiff was allowed to proceed on the following claims:

**Count 1:** **Eighth Amendment deliberate indifference claim against Sydelle Fulk and Christine Brown for failing to ensure that Plaintiff's medications were continued;**

**Count 2:** **Eighth Amendment cruel and unusual punishment claim against Defendants Mitchell and McDonald for refusing to house Plaintiff in a cell that met his needs;**

**Count 3:** First Amendment retaliation claim against Defendants Skorch, Ridgeway, and Brock Morgenstern for allowing Plaintiff to be disciplined over his requests for single-cell housing;

**Count 4:** Intentional Infliction of Emotional Distress against all Defendants

(Doc. 34 at 5).

The Defendants have identified four grievances that are potentially relevant to the claims presented in this lawsuit. (Doc. 43).

FINDINGS OF FACT

In a January 17, 2023, grievance assigned number 180-01-23, Plaintiff alleged that upon arrival at Pinckneyville he informed staff that his mental health precluded him from living with a cellmate, and that he had previously attacked a cellmate and bit his finger off due to his mental health. (Doc. 43-2 at 22-23). He explained that at Menard he had been granted single-cell status to accommodate his mental health. He further explained that upon arrival at 4 house, he explained to the officer and sergeant that he could not go into a cell with another inmate, and was told he would have to refuse housing. (Doc. 43-2 at 23). Rather than take action to address his issue, the 4-house staff directed him to restricted housing. He also claimed that prior to going to 4 house, he had informed a female employee and the Warden of his problems and needs, but neither person took action to correct the issue. (Doc. 43-2 at 23). He alleged that he was being "punished" for his mental illness and inability to be housed with another prisoner. The grievance was expedited for emergency processing by the Warden on January 19, 2023. (Doc. 43-2 at 22). An "MHA" indicated to the grievance officer that "it was determined that this

individual needs to be single-celled, per mental health and I.A. Placement was notified."
(Doc. 43-2 at 21).  The CAO concurred with the denial of the grievance (Doc. 43-2 at 20),
and the ARB denied the grievance appeal as appropriately addressed by the facility.
(Doc. 43-2 at 19).

In a February 9, 2023, grievance assigned number 476-02-23, plaintiff alleged that
upon arrival to Pinckneyville he notified medical and mental health staff of his multiple
mental illnesses and his need for a single-cell placement.  (Doc. 43-2 at 17).  Plaintiff told
additional staff and was told to raise his issues directly with officers at his assigned
cellhouse.  He proceeded to walk to the assigned cellhouse and informed the sergeant
and lieutenant about his placement issues.  (Doc. 43-2 at 18).  He was directed to wait
outside for someone to escort him to another cellhouse.  Upon arrival at the next
cellhouse, he was informed that he had a dayroom restriction and would be housed on
an upper deck.  Plaintiff informed Defendant McDonald of his injuries and permits from
Menard, but McDonald insisted he would have to reside on the upper deck.  Plaintiff
further alleged that on January 17, 2023, he was taken before the disciplinary committee,
for a ticket he alleged that he had not received notice about.  He repeatedly informed the
disciplinary committee members that he asked for a single-cell because he needed it for
mental health reasons, but the committee insisted there was no single-celling at
Pinckneyville.  A committee member promised to raise the issue with the administration,
but Plaintiff never heard back on that and never got a copy of his ticket.  He ultimately
received a week of dayroom restriction and a month of B-grade.  (*Id.*).  He sought

expungement of the disciplinary ticket and conceded he had been moved to a single-cell status at the time of filing the grievance.  (*Id.* at 17).

The grievance officer recommended that the grievance be denied because Plaintiff did not present exonerating evidence for the disciplinary infraction of refusing housing. (Doc. 43-2 at 15-16).  The Chief Administrative Officer approved, and the ARB ultimately denied the grievance for multiple reasons.  (Doc. 43-2 at 15, 11).  In email correspondence between the ARB and a prison official, the ARB official asked why Plaintiff was placed on an upper gallery.  (Doc. 43-2 at 14).  In response, prison staff indicated that Plaintiff's permits should have "followed" from Menard to Pinckneyville, and that as of May 18, 2023, Plaintiff was single-celled and had permits.  (*Id.*).

In a February 22, 2023, grievance assigned number 592-02-23, plaintiff alleged that upon arrival he informed staff of his hearing impairment but did not receive accommodations.  (Doc. 43-2 at 9-10).  He claims he sent weekly requests to ADA coordinator, Christine Brown, but had not yet received any assistance.  He described the lack of hearing accommodations a problematic because it caused him to miss things like call passes, chow lines, yard lines, and dayroom, all things that are announced audibly. (Doc. 43-2 at 9-10).  He sought a variety of accommodations, such as hearing aid batteries, a vibrating watch, and a placard on his door.  (Doc. 43-2 at 10).  In response, the ADA coordinator indicated that she sent replacement hearing aid batteries and a sign, and that plaintiff could seek replacement of headphones and a watch he had been issued a few months ago at Menard if they were broken.  (Doc. 43-2 at 8).  The grievance officer denied

the grievance, and the Chief Administrative Officer concurred.  (*Id.*).  On June 12, 2023, the ARB denied the grievance as appropriately addressed by the prison.  (Doc. 43-2 at 7).

In a March 5, 2023, grievance assigned number 746-03-23, plaintiff alleged that he had left knee and right shoulder injuries for which he had previously received regular physical therapy, a double cuff permit, and a low gallery/low bunk permit.  (Doc. 43-1 at 34-35).  He alleged that he informed the medical intake nurse of his issues, but from January 6 to January 31, 2023, Lt. McDonald housed him on an upper deck, which caused him excruciating pain because he had to traverse stairs to access amenities.  (Doc. 43-1 at 35).  He alleges this caused his knee to worsen.  He claims he wrote healthcare and placed request slips in the proper boxes regularly from January 2023 through the filing of the grievance to no avail.  He was single cuffed during a shakedown which exacerbated his shoulder injury.  He requested a reinstatement of physical therapy, and that his permits be honored.  (Doc. 43-1 at 35).  In response the healthcare unit administrator and ADA coordinator indicated his physical therapy had been discontinued after non-attendance at Menard.  (Doc. 43-1 at 33).  They further indicated that permits did not transfer from one prison to another, but that he would be placed on the provider line to discuss his need for permits or accommodations.  (*Id.*).  The grievance was denied by the grievance officer and Chief Administrative officer, and Plaintiff timely appealed.  (Doc. 43-1 at 32).  The ARB denied the grievance on July 5, 2023, for multiple reasons.  (Doc. 43-1 at 31).

## CONCLUSIONS OF LAW

A.  Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion

requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If an inmate does not know an individual's name, he may still file a grievance by describing the individual. 20 Ill. Admin. Code § 504.810(c).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE §

504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

For an emergency grievance, an inmate may direct his request to the Chief Administrative officer, who will determine if the issue should be handled as an emergency. 20 ILL. ADMIN. CODE § 504.840(a)-(c). If the grievance is not deemed an emergency, the inmate must return to the normal grievance channels to resubmit the grievance as non-emergent. *Id.*

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing because there are no genuine disputes of fact. Plaintiff did not file a response, so the Defendants factual assertions are treated as true, but the record has still been interpreted broadly in Plaintiff's favor. The Defendants have credibly established that Plaintiff had access to the grievance procedure, and that he was able to take all steps necessary to exhaust grievances, by their submission of grievance records that contain many properly exhausted grievances. They argue that grievances described above are insufficient to exhaust the claims against Defendants Brown, Mitchell, and Morgenstern. The Court will address each defendant individually.

First, as to Defendant Brown, Plaintiff faulted Brown in his complaint for failing to ensure he received continuous access to his needed prescription medications upon the

transfer from one prison to another.  In his amended complaint, he alleged that Brown
was aware from emails and correspondence of his lack of medication from January 6,
2023, until January 11, 2023, which caused him severe withdrawal, but she failed to act to
address the problem.  The Defendants contend that Plaintiff did not file and exhaust any
grievance about this problem, and that his only grievance mentioning Brown pertained
to hearing-impaired accommodations.  Plaintiff's grievance records mention Brown
explicitly in grievance 592-02-23, which was limited solely to his desire for hearing
accommodations such as hearing aid batteries and a tactile watch.  None of the other
exhausted grievances highlight Brown, or the brief outage of medications from January
6 to January 11, 2023.  As such, the record lacks evidence that Plaintiff pursued exhaustion
related to this claim and Claim 1 against Brown related to his lapse in medication must
be dismissed without prejudice for failure to exhaust.

Second, the Defendants contend that Plaintiff has not adequately exhausted Claim
2 against Defendant Mitchell because the precise allegations in the grievance did not align
with Plaintiff's assertion in the complaint that Mitchell stated Pinckneyville did not offer
single cells.  Defendants point to grievance 180-01-23, filed January 17, 2023.  In that
grievance, Plaintiff clearly and unequivocally stated that he voiced his concerns about his
mental health and need for a single man cell directly in Mitchell's presence and that
Mitchell failed to exercise his authority to investigate or remedy the problem of Plaintiff's
placement with a cellmate.  Defendants parsing of this claim is too particular.  They argue
that because the grievance did not contain the direct quotation from Mitchell that Plaintiff
recited in his complaint, then the grievance is not sufficient to exhaust the claim against

Mitchell.  Plaintiff did not need to include a direct quote in the grievance to adequately exhaust a claim in this lawsuit that Mitchell refused to help with his problem.  Grievance 180-01-23 is sufficient to exhaust the assertion that Mitchell was made aware of Plaintiff's housing needs on January 6, 2023, and refused immediate assistance.  Thus, Claim 2 against Defendant Mitchell may proceed, and the Defendants' Motion (Doc. 43) is denied as to Mitchell.

Third, the Defendants contend that Plaintiff does not have any grievances sufficient to exhaust Claim 3 against Defendant Morgenstern for alleged retaliation by the issuance of a disciplinary ticket for refusing housing.  While it is correct that Morgenstern is not identified by name in any of the four grievances described in the fact section, Plaintiff does appear to describe his interaction with Morgenstern in the grievance challenging his disciplinary ticket.  In the amended complaint, he describes Morgenstern as an individual he spoke with at the 4 house about his need for a single man cell, and in grievance 476-02-23 he described telling the sergeant and lieutenant at 4 house that he needed single man status, but instead of receiving the accommodation he was sent to 5 house and given a dayroom restriction.  (Doc. 43-2 at 17-18).  This series of events ultimately led to his receipt of a disciplinary ticket for refusing housing.  The grievance records also include the disciplinary documents, which indicate that Brock Morgenstern was the individual who reported Plaintiff for allegedly refusing housing at the 4 house.  Additionally in grievance 180-01-23, Plaintiff also indicated that he told two officials at 4 house that he needed a single cell, but that they refused to help and sent him to 5 house.

A grievance does not need to include legal theories to be sufficient to exhaust administrative remedies.  *See e.g.*, *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  A grievance is generally sufficient if it complies with what is required by the Illinois Administrative Code, and if it contains enough factual detail for the prison to understand the nature of the wrong for which the inmate sought redress.  Though Plaintiff did not identify Morgenstern by name in grievance 476-02-23 or 180-01-23, he stated he spoke with officers at the 4 house, and the records show he must have spoken with Morgenstern in order for Morgenstern to issue a refusal of housing disciplinary report.  The grievances further clearly indicate that Plaintiff attempted to challenge the fact that he was disciplined for voicing his mental health needs to staff who were attempting to place him in a cell with a fellow inmate.  Plaintiff stated in grievance 476-02-23 that he felt he was being punished for voicing his mental health needs.  These assertions align sufficiently with Claim 3 in this case, which asserts that Defendants Morgenstern, Ridgeway and Skorch retaliated against him for voicing his mental health needs by issuing and finalizing a disciplinary report for this conduct.

It is also interesting to note that while Morgenstern sought summary judgment on exhaustion, Ridgeway and Skorch did not.  These two were the adjustment committee members discussed in grievance 476-02-23.  They were not identified by name in the grievance but were generally described as individuals Plaintiff interacted with when contesting the disciplinary ticket.  The fact that these two did not seek summary judgment on exhaustion, when they were generally identified in the same grievance as

Morgenstern, further weakens Morgenstern's claim of non-exhaustion. Thus, the Court finds it appropriate to deny Defendants' motion as to Morgenstern.

Finally, the Defendants argue that Plaintiff's claim for the intentional infliction of emotional distress should be dismissed for non-exhaustion because none of the grievances that discuss their involvement make mention of outrageous conduct, nor do they allege Plaintiff suffered severe emotional distress. This argument overlooks aspects of the exhausted grievances. Plaintiff alleges that his housing situation and the disciplinary outcome had detrimental effects on his mental health and depression. (Doc. 43-2 at 16). Plaintiff also alleged in another grievance that being housed with another inmate can cause him to become delusion, to hallucinate, or to experience severe psychosis. (Doc. 43-2 at 23). He explained both in his complaints and in the grievances that the responses he got to his requests for an adequate cell placement were dismissive, despite his repeated insistence that his needs were credible and serious for his mental and physical well-being. These assertions are sufficient for Claim 4 to proceed, with the sole exception that Claim 4 will be dismissed as to Defendant Brown because the only other claim against Brown is dismissed for non-exhaustion and the Court relinquishes supplemental jurisdiction over the remaining state law allegation against Brown.

## Disposition

The Motion for Summary Judgment on the issue of exhaustion (Doc. 43) is **GRANTED in PART** as to Claim 1 against Defendant Brown, and it is **DENIED** in **PART** as to Claims 2 and 3 against Defendants Mitchell and Morgenstern. The Court relinquishes supplemental jurisdiction over Claim 4 against Defendant Brown, but Claim

4 may proceed against all other remaining Defendants.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Brown, and to enter judgment in her favor at the close of this case.  The remaining Claims shall proceed to merits discovery against Defendants Fulk, Mitchell, McDonald, Morgenstern, Ridgeway, and Skorch.  A merits discovery schedule shall follow.

**IT IS SO ORDERED.**

Dated: February 24, 2025

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge