IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND SERIO, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:23-cv-2874-DWD ) |
| DAVID MITCHELL, BRANDON RIDGEWAY, DIANE SKORCH, BROCK MORGENSTERN, JOSH MCDONALD, and SYDELLE FULK | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is the Application for Relief from Assignment of Mr. Jerald D. Dehne. (Doc. 62). Mr. Dehne was assigned as counsel for Plaintiff on August 12, 2025. (Doc. 58). At this time, however, Mr. Dehne informs the Court that he has a conflict of interest with the Office of the Attorney General, which is defending Defendants in this action. Accordingly, for good cause shown therein, Mr. Dehne's Application for Relief from Assignment is **GRANTED**. *See* L.R. 83.11(a)(1). As explained below, Mr. L. Douglas Gill of the Gill Law Firm is **ASSIGNED** as counsel for Plaintiff. The matter remains **REFERRED** for a mandatory mediation with Court Attorney Megan Arvola.

**I. Plaintiff's Motion for the Appointment of Counsel (Doc. 56)**

The Court designated the four following claims to proceed in this case:

Count 1:   Eighth Amendment deliberate indifference claim against Sydelle Fulk and Christine Brown for failing to ensure that Plaintiff's medications were continued;

Count 2:   Eighth Amendment cruel and unusual punishment claim

|  |  |
|---|---|
|  | against Defendants Mitchell and McDonald for refusing to house Plaintiff in a cell that met his needs; |
| Count 3: | First Amendment retaliation claim against Defendants Skorch, Ridgeway, and Brock Morgenstern for allowing Plaintiff to be disciplined over his requests for single-cell housing; |
| Count 4: | Intentional Infliction of Emotional Distress against all Defendants. |

(Doc. 34, pgs. 5, 11; 50, pgs. 3-4).

On February 24, 2025, the Court ruled as follows on the issue of exhaustion of administrative remedies:

> The Motion for Summary Judgment on the issue of exhaustion (Doc. 43) is **GRANTED in PART** as to Claim 1 against Defendant Brown, and it is **DENIED** in **PART** as to Claims 2 and 3 against Defendants Mitchell and Morgenstern. The Court relinquishes supplemental jurisdiction over Claim 4 against Defendant Brown, but Claim 4 may proceed against all other remaining Defendants. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Brown, and to enter judgment in her favor at the close of this case. The remaining Claims shall proceed to merits discovery against Defendants Fulk, Mitchell, McDonald, Morgenstern, Ridgeway, and Skorch. A merits discovery schedule shall follow.

(Doc. 50, pgs. 14-15).[1]

Plaintiff, who is proceeding *in forma pauperis*, was afforded additional time to respond to the Motion for Summary Judgment, but he failed to do so. (Docs. 5; 50, pg. 1). Plaintiff states he "simply could not understand the things in the law library [that] he read on the issue of exhaustion[,] [so] he was unable to form a response to the summary judgment motion." (Doc. 56, pg. 2). Nevertheless, the Court ruled in the above manner.

Plaintiff argued the appointment of counsel is warranted because he has always

---

[1] The Motion for Summary Judgment was filed by Defendants Brown, Mitchell, and Morgenstern. (Doc. 43). Defendants Ridgeway, Skorch, and McDonald did not file such a motion, and Defendant Fulk withdrew the affirmative defense of failure to exhaust administrative remedies. (Docs. 33; 50, pg. 1).

required extensive help from other prisoners or outside counsel in this and other cases. (Doc. 56, pgs. 1-3, 6). In this case, Defendant Fulk served discovery requests that Plaintiff "does not understand enough…to turn over adequate responses and [to] protect his rights." (Doc. 56, pg. 2). Plaintiff made "multiple attempts to find a prisoner to help him with discovery[,] but everyone has turned him down." (Doc. 56, pg. 2). One prisoner helped Plaintiff with the instant Motion for the Appointment of Counsel, but he "would go no further and [was] transferred to another prison." (Doc. 56, pg. 2). Similarly, Plaintiff claims he "has written at least twenty-five (25) attorneys and asked that they take the case." (Doc. 56, pg. 2). To show his efforts, Plaintiff attached the only two responses that he received to his inquiries about securing counsel in this case. (Doc. 56, pgs. 9-11).

Plaintiff explained his "serious comprehension problems when it comes to legal pleadings and such documents." (Doc. 56, pg. 3). He also noted the U.S. Constitution, Illinois Constitution, legal theory, and civil and criminal rights are "much too complicated to comprehend." (Doc. 56, pg. 3). Plaintiff described his education as follows: "Plaintiff strugled [*sic*] in grammar school and stopped going completely in the sixth (6th) grade…. [H]e attended one day of high school." (Doc. 56, pg. 3). During his incarceration, Plaintiff "barely passed" the GED examination "after several attempts." (Doc. 56, pg. 3).

Finally, Plaintiff described his "multiple serious mental illnesses," which "effect his daily life in 2 very negative way[s]." (Doc. 56, pg. 3). First, Plaintiff "can suffer from psychossis [*sic*] and horrible depression." (Doc. 56, pg. 3). Although he is prescribed medication, "it leaves him sleepy" and unable to concentrate, read, or comprehend. (Doc. 56, pgs. 3, 6). Second, due to his "serious mental illnesses[,] he can go days sometimes weeks unable to even get out of bed [to] perform normal daily activities." (Doc. 56, pgs.

4, 6). The IDOC purportedly deemed Plaintiff "seriously mentally ill." (Doc. 56, pg. 3). Notably, Plaintiff was appointed counsel in three other federal cases. *See Serio v. Rauner et al.*, No. 15-cv-6262, Doc. 11, pg. 7 (N.D. Ill. July 29, 2015) ("Given the nature of Plaintiff's claims and that Plaintiff's medical issues appear to be ongoing, the Court recruits [counsel] to represent Plaintiff in accordance with counsel's trial bar obligations."); *Serio v. Westerman et al.*, No. 16-cv-763, Doc. 73, pg. 2 (S.D. Ill. Oct. 23, 2018) ("To date, the Court has considered Plaintiff capable of representing himself and perceives that Plaintiff would do an adequate job representing himself at trial. Nevertheless, for the benefit of the Court and in appreciation for the Court's trial calendar, the recruitment of counsel will likely ensure that the final pretrial conference and trial run more efficiently."); *Serio v. Williams et al.*, No. 17-cv-6949, Doc. 53 (N.D. Ill. July 12, 2019) ("In light of Plaintiff's recent pleadings and his averment of mental illness, Plaintiff's renewed motion for attorney representation is granted. The Court recruits [counsel] to represent Plaintiff in accordance with counsel's trial bar obligations."); (Doc. 56, pg. 6).

On August 12, 2025, the Court found, based on the representation that he has "written at least twenty-five (25) attorneys," but only received the two responses attached to the Motion for the Appointment of Counsel, Plaintiff satisfied the threshold burden of demonstrating a reasonable attempt to obtain counsel under 28 U.S.C. § 1915(e)(1). (Doc. 58, pgs. 4-5) (citing 28 U.S.C. § 1915(e)(1); *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018); *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007); *Perry v. Sims*, 990 F.3d 505, 513 (7th Cir. 2021); (Doc. 56, pgs. 2, 9-11)). Moreover, in consideration of Plaintiff's representations about his "serious [legal] comprehension problems," limited primary education, and "multiple serious mental illnesses," together

with the difficulties of a multi-claim and defendant action, merits discovery, dispositive motion practice, and trial preparation, the Court further found he could not competently litigate the case. (Doc. 58, pgs. 4-5) (citing *Walker*, 900 F.3d at 938; *Santiago*, 599 F.3d at 760-61; *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022); (Doc. 56, pgs. 3-4, 6)).

For these reasons, the Motion for the Appointment of Counsel was granted. In light of Mr. Dehne's relief from assignment, and in accordance with § 1915(e)(1) and Local Rules 83.1(j) and 83.9(b), Mr. L. Douglas Gill is **ASSIGNED** to represent Plaintiff in this civil rights case. *See* L.Rs. 83.1(j) ("Unless expressly exempted, every member of the bar of this Court, as defined in subparagraph (a) of this Rule, shall be available for assignment by the Court to represent or assist in the representation of those who cannot afford to hire an attorney. SDIL-LR 83.8-83.14 set forth the district's *Pro Bono* Program and applicable procedures."); 83.9(b) (eff. Oct. 30, 2023) ("Counsel shall be assigned by Order of the Court, which shall be immediately sent to all parties to the action and the assigned attorney. The order shall include the name, address, and, if available, telephone number of the party to be represented. Information regarding how to contact a prisoner-party is available on the Court's website."). On or before September 9, 2025, Mr. Gill shall enter his appearance in this case. Mr. Gill is free to share his responsibilities with an associate who is also admitted to practice in this District Court. However, Mr. Gill must enter the case and make first contact with Plaintiff, explaining that an associate may also work on the case. Plaintiff should wait for his attorney to contact him in order to allow counsel an opportunity to review the record.

The Clerk of the Court is **DIRECTED** to transmit this Memorandum & Order, as well as copies of the docket sheet, to Mr. L. Douglas Gill of the Gill Law Firm, 239 S. Lewis

Lane, Suite B, Carbondale, Illinois 62901. The electronic case file is available through the CM-ECF system. Mr. Gill is **ADVISED** of the need to consult Local Rules 83.8 to 83.14 regarding *pro bono* case procedures.

Now that counsel has been assigned, Plaintiff **shall not** personally file anything in this case, except, if necessary, a pleading requesting for Mr. Gill to withdraw his representation. If Mr. Gill is allowed to withdraw at the request of Plaintiff, there is no guarantee that the Court will appoint other counsel for Plaintiff in this case.

Plaintiff is proceeding *in forma pauperis*. However, if Plaintiff should recover damages in this action (by verdict or settlement), then Plaintiff and Mr. Gill are **ADVISED** that Plaintiff will be obligated to pay the filing fee from that recovery.

Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses, as funds are available. The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement. Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will be waived. *See* SDIL-LR 83.13. The funds available for this purpose are limited, however, and counsel should use the utmost care when incurring out-of-pocket costs. In no event will funds be reimbursed if the expenditure is found to be without a proper basis. The Court has no authority to pay attorney fees in this case. No portion of a partial filing fee assessed pursuant to 28 U.S.C. § 1915 will be reimbursed. Counsel may be reimbursed for PACER fees for this case.

The District Court has entered into an agreement with attorney Alan Mills and the Uptown People's Law Center to consult with lawyers in these cases,

including substantive and procedural questions (both legal and practical) and dealing with clients. Mr. Mills can be reached by email at alan@uplcchicago.org. He can also be reached by phone at 773-769-1411, but email is his preferred means of contact. His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* in this Court. Further, the Court's website, www.ilsd.uscourts.gov, includes a guide for attorneys which is available as a resource. To access the guide, click on the "Attorney Information" tab at the top of the Court's website and select the "Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983 Cases." The Court encourages appointed counsel to consult it and Mr. Mills, as needed.

As of this date, Plaintiff's contact information is:

**Raymond Serio, No. B70625**
**Lawrence Correctional Center**
**10930 Lawrence Road**
**Sumner, IL 62466**

## II. Mandatory Mediation Referral and Appointment of Mediator

This prisoner civil rights case has survived a threshold review, the exhaustion of administrative remedies is no longer at issue, and the deadlines for merits discovery and the filing of dispositive motions have not yet lapsed. (Docs. 50 & 51). Therefore, on August 12, 2025, the Court found it was appropriate to refer the case for a mandatory mediation under the Mandatory Mediation Plan, as provided in § 2.1(A)(2) n. 1, to promote "a more efficient and less expensive alternative to continuing litigation, without impairing the quality of justice or the right to trial." *See* Admin. Order No. 301, §§ 1.2(A), 2.1(A)(2) n. 1 (eff. Oct. 8, 2021).

The Court recognized each case is unique. In some cases, "the parties may have

enough information to fully evaluate the case after the exchange of written discovery." *See id*. § 3.1A. In other cases, a "mediation may not be appropriate until much later." *See id*. When referring this case for a mandatory mediation, it was the Court's intention for the mandatory mediation to occur when the case evolved to the point where the negotiations would be meaningful and productive. Thus, the Court ordered:

1. The parties, counsel, and the parties' representatives, if any, shall engage in a single mandatory mediation session. The Mandatory Mediation Plan and related information can be found at https://www.ilsd.uscourts.gov/mandatory-mediation-program. The Mandatory Mediation Plan is also attached to this Memorandum & Order.

2. Court Attorney and ADR Coordinator Megan Arvola is appointed as the Mediator in this matter. Ms. Arvola is an attorney and trained mediator. She previously served as a term law clerk to a former district judge in this District for three years. After serving as a term law clerk, she represented clients in private civil practice for over eight years before returning to the Court. As she is an employee of the Court, her appointment is without charge to the parties. Ms. Arvola serves as a neutral in this matter and is not a decision maker. Ms. Arvola is bound by the confidentiality provisions of the Mandatory Mediation Plan, as are the parties, counsel, and the parties' representatives. Participants in the mediation session are directed to review the confidentiality provisions of § 3.8, as well as the entire Mandatory Mediation Plan.

3. Within 30 days, any party could file a "Motion to Opt Out of Mandatory Mediation." Defendant Fulk filed such a motion on August 20, 2025. (Doc. 20). Mr. Gill is **DIRECTED** to file a Response to that Motion to Opt Out of Mandatory Mediation, and any other such motion that is hereafter filed by Defendants, on or before **October 10, 2025**.

No reply may be filed. Thereafter, the Court will enter an Order on the issue. As previously noted, such Motions are only granted for "good cause." They must set forth specific reasons why the mandatory mediation has no reasonable chance of being productive and identify when the case may be in a better posture to explore settlement.

4. If the above-contemplated Motion is denied, the Court will enter an Order directing the mediator to set a single mandatory mediation session no later than **30 days before the close of discovery**.

5. Absent a motion from the parties, the referral of this case for a mandatory mediation will not delay or defer other dates established in the Scheduling Order (Doc. 51) and has no effect on the scheduled progress of the case toward trial.

6. If the parties agree that it would be beneficial to set the mandatory mediation session at an earlier date, then they may file a motion with the Court. The parties may also request a stay of the proceedings if they believe that would allow for a more productive mandatory mediation session.

7. Participants in the mandatory mediation session may discuss the case in confidence and *ex parte* with Ms. Arvola. Both sides are encouraged to engage in communication with Ms. Arvola prior to the mandatory mediation session in order to discuss the case, her role, the general process, and the importance of confidentiality.

8. In the event a settlement in principle is reached, Ms. Arvola may make a record of the material terms, but there will be no other recordings of the mandatory mediation session. Any recording of the material terms will remain confidential unless a dispute arises regarding the settlement.

9. At the conclusion of the single mandatory mediation session, Ms. Arvola

will file a Report of Mandatory Mediation on the docket that states the outcome of the mandatory mediation session but does not disclose confidential communications.

10. The parties shall participate in the mandatory mediation with Ms. Arvola in conformance with the Mandatory Mediation Plan. Any failure to conform to its provisions or to this Memorandum & Order may be deemed sanctionable by the Court.

### III. Conclusion

As explained above, the Application for Relief from Assignment is **GRANTED**. Mr. L. Douglas Gill of the Gill Law Firm is **ASSIGNED** as counsel for Plaintiff. The matter remains **REFERRED** for a mandatory mediation with Court Attorney Megan Arvola.

**SO ORDERED**.

Dated: August 26, 2025

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge